UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KYLE F. JACKSON and MELANIE JACKSON, husband and wife and the marital community composed thereof, | NO. |
| Plaintiffs, | |
| v. | **COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT, and OTHER WRONGFUL CONDUCT** |
| CARVANA, LLC, a foreign limited liability company; BRIDGECREST CREDIT COMPANY, LLC, a foreign limited liability company, | |
| Defendants. | |

COME NOW the Plaintiffs, Kyle F. Jackson and Melanie Jackson, by and through their

attorney of record, and hereby allege as follows:

## 1. INTRODUCTION

In December of 2021, the Plaintiffs purchased a used 2017 Chevrolet Silverado 2500

HD crew cab truck ("Vehicle") from Carvana, LLC. Carvana is an online used car retailer

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 1**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA 98020
Phone: 425-582-8165
eugenebolin@gmail.com

based in Tempe, Arizona. At the time of purchase, the Vehicle was still under the manufacturer's warranty and was also covered by the Dealership's Limited Warranty.

The Plaintiffs purchased the Vehicle through Carvana's online portal. In its advertising, Carvana ("Dealership") represented that the Vehicle had an 8' long bed. This was exactly what the Plaintiffs wanted. However, when the Dealership delivered the Vehicle to the Plaintiffs, the Plaintiffs discovered that the Vehicle had a 6.5' short bed. Although the Dealership advertises that every Carvana car comes with a 7-day return policy, the Dealership responded to the Plaintiffs' attempts to exchange the Vehicle in that period with delays, unfulfilled promises, and credit increases.

The Dealership violated its express and implied warranties when it claimed the Vehicle was a long bed when in fact it was not. The Vehicle the Dealership delivered to the Plaintiffs was substantially different from the vehicle the Plaintiffs agreed to purchase. The Dealership later responded to the Plaintiffs' complaint to the Attorney General's office by promising to refund the entirety of the funds the Plaintiffs had expended on the Vehicle. This offer appeared to be for the benefit of the Attorney General's office only. In fact, the Dealership reneged on this offer and left the Plaintiffs with a vehicle they neither ordered nor wanted. The Dealership was also delinquent in licensing and registering the Vehicle and caused the Plaintiffs three months' loss of use.

The Plaintiffs now seek recovery of all economic damages they have sustained that were proximately due to the wrongful conduct of the Dealership.

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 2**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

## 2. JURISDICTION

2.1     All acts, omissions, and wrongful conduct described herein occurred primarily in Snohomish County, Washington.  The Court has jurisdiction of this case under 28 U.S.C. 1332 (diversity) and possibly other statutes.

## 3. PARTIES

3.1     At all times relevant hereto, Plaintiffs Kyle F. Jackson and Melanie Jackson, husband and wife, resided in Whatcom County, Washington.

3.2     Carvana, LLC, UBI 604 322 588, sold the Plaintiffs a used 2017 Chevrolet Silverado 2500 HD crew cab truck. Carvana, LLC, is an online used car retailer that maintains a corporate office at 1930 W. Rio Salado Pkwy., Tempe, AZ 85281-2207.

3.3     The registered agent for Carvana, LLC, is Corporation Service Company, which maintains an office located at 300 Deschutes Way, S.W., Ste. 208 MC-CSC1, Tumwater, WA 98501.

3.4     Carvana, LLC, and its owners, employees, representatives, managers, and agents are all collectively referred to hereafter as "the Dealership," and liable to the Plaintiffs under the causes of action described *infra*, and RCW 46.70.027.

3.5     Bridgecrest Credit Company, LLC, UBI 604 065 371, financed the purchase of the Vehicle. Bridgecrest Credit Company, LLC, maintains a principal office at 7300 E Hampton Ave #101, Mesa, AZ 85209.

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 3**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

3.6     The registered agent for Bridgecrest Credit Company, LLC, is Corporation Service Company, which maintains an office located at 300 Deschutes Way, S.W., Ste. 208 MC-CSC1, Tumwater, WA 98501.

3.7     Bridgecrest Credit Company, LLC, is a defendant by virtue of the Holder Rule, 16 CFR 433.2. Under the Holder Rule, a lender that finances a sale procured through deceptive or unfair conduct is liable to the same degree as the seller, to the extent of payments made by the Plaintiff.

## 4.  FACTS SUPPORTING CAUSES OF ACTION

4.1     In December of 2021, Plaintiff Kyle F. Jackson was interested in purchasing a used but dependable 8' long bed truck. Through an online search, he found an advertisement for a used 2017 Chevrolet Silverado 2500 HD truck ("Vehicle") with an 8' long bed that he thought might suit his needs. The Vehicle was offered for sale by Carvana, LLC ("the Dealership"), a national online retailer of used vehicles. The Dealership promised contactless delivery, which was important to Mr. Jackson as the covid virus was a serious issue at the time.

4.2     Mr. Jackson ordered the Vehicle online on December 26, 2021 and was told the Vehicle would be delivered directly to his home in about two weeks.

4.3     On the date of sale, the used 2017 Chevrolet Silverado 2500 HD crew cab truck had 61,430 miles on the odometer. The VIN is 1GC1KVEG4HF238007. After charges for taxes and fees (including the delivery fee), the cash price for the Vehicle was $50,907.17.

COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 4

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

The "Retail Purchase Agreement – Washington," which is dated February 7, 2022, is attached hereto as Exhibit 1.

4.4    At the Dealership's suggestion, Mr. Jackson financed the purchase through Bridgecrest Credit Company, LLC. After financing charges, the Total Sale Price was $57,876.55 The Retail Installment Sale Contract (RISC) is attached hereto as Exhibit 2.

4.5    The Retail Installment Sale Contract (RISC) is dated February 7, 2022. This was the date of delivery.

4.6    The Vehicle was still under the manufacturer's warranty. The vehicle also came with a Carvana Dealership Limited Warranty. The Dealership's website states: "Every car comes standard with a limited 100 day/4,189 mile 'Worry Free Guarantee.' If something should happen, we'll take care of it."

4.7    The Vehicle Title Application lists the sale and delivery date as January 3, 2022. The Motor Vehicle Title Reassignment Supplement also lists the date of sale as January 3, 2022.

4.8    On January 10, 2022, Dealership employee Joel Castillo sent Mr. Jackson a packet of documents to sign. The documents were: Vehicle Title Application, Title Reassignment, Odometer Disclosure Statement, and Power of Attorney (for the purposes of transferring title). Temporary license plates and registration were also sent on this date.

4.9    When three weeks passed with no delivery of the Vehicle, Mr. Jackson called the Dealership to inquire about the delay. The Dealership responded that it was having problems with their transport contractors. They told Mr. Jackson that instead of home

COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 5

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
eugenebolin@gmail.com

delivery, he would have to pick up the Vehicle at the Dealership's hub in Auburn, WA. This location was about four hours from his home in Blaine, WA.

4.10    A day or so later, the Dealership changed the delivery site to a Lowe's parking lot in Everett, WA, about two hours from Mr. Jackson's home.

4.11    On the designated delivery day, Mr. Jackson took a day off from work, engaged an assistant to help him for an out-of-pocket cost of $200.00, and drove to Lowe's in Everett to pick up the Vehicle. He sat all day waiting to take delivery of a vehicle that never arrived. At the end of the day, he called the Dealership. The Dealership told Mr. Jackson that it couldn't make delivery that day and that someone should have called to let him know.

4.12    The Dealership then told Mr. Jackson that it was increasing his interest rate from 4.8% to over 5%. The purchase agreement and financing documents were as yet unsigned. The Dealership apparently uses the delivery date as the official sale date on the sale documents.

4.13    Mr. Jackson called the Dealership and spoke with "Clinton" about the increased interest rate. Clinton told Mr. Jackson that the original interest rate of 4.8% would be honored.

4.14    Each time the Dealership delayed and changed the delivery date, it would re-check Mr. Jackson's credit history, which damaged his credit rating.

4.15    The Dealership rescheduled the delivery date to February 7, 2022. Mr. Jackson took another day off work, paid an associate to go with him, and drove to Lowe's in Everett.

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 6**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
eugenebolin@gmail.com

When the delivery driver arrived, Mr. Jackson discovered that the Vehicle had multiple defects that the Dealership had failed to disclose.

4.16   The undisclosed defects included 1) a large dent on the rear of the cab; 2) an inordinate amount of rust on the undercarriage, wheel wells, and engine casing; 3) a ticking noise emanating from the engine; and 4) badly worn tires.

4.17   However, the most salient defect was that the Dealership had sent the wrong vehicle. Mr. Jackson ordered an 8' long bed truck, but the Dealership delivered a 6.5' short bed truck.

4.18   The delivery driver advised Mr. Jackson to take delivery of the Vehicle. The driver said he would notify the aftercare team, who would swap out the short bed truck for a long bed truck and deliver it directly to Mr. Jackson's door.

4.19   At Mr. Jackson's request, the driver took photographs of the Vehicle's defects.

4.20   The Dealership initially told Mr. Jackson it would exchange the short bed Vehicle for the correct long bed Vehicle. Several days later, employee Clinton told Mr. Jackson that the Dealership did not have a long bed truck in its inventory. Clinton promised to compensate Mr. Jackson $25.00 per day for each day delivery had been delayed. Clinton also promised to compensate Mr. Jackson for the short bed by refunding some of the purchase price. Additionally, Clinton promised Mr. Jackson a $750.00 discount on any truck exchange.

4.21   Mr. Jackson found a Dodge long bed truck on the Dealership's website that was $7,500.00 more than what the Vehicle had cost. Clinton said he would put a hold on the

COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 7

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

truck if Mr. Jackson paid the difference. Mr. Jackson agreed. However, the next day Clinton called Mr. Jackson and said the long bed truck had already been sold.

4.22    Mr. Jackson noted other long bed trucks for sale on the Dealership's website that Clinton later reported were actually short beds. It appeared to be a pattern that many vehicles sold by the Dealership were represented incorrectly in its advertising.

4.23    Mr. Jackson next chose a Denali long bed truck from the Dealership's website. The Dealership locked him into the purchase, but then informed him that he did not qualify for financing because the credit documents he sent were inadequate. The Dealership found fault with Mr. Jackson's utility bills and Washington driver's license, even though these documents had been adequate weeks earlier during the original sale.

4.24    The Dealership charged Mr. Jackson for licensing and fees, then failed to register the Vehicle as promised. At the time of sale, the Dealership sent Mr. Jackson a 30-day non-resident tag good until March 15, 2022, that had been issued by the Arizona Department of Transportation (ADOT). The Dealership then sent a 90-day temporary non-resident tag that expired June 16, 2022, also issued by ADOT. Mr. Jackson sustained three months' loss of use, between June 16, 2022 and September 16, 2022, waiting for the Dealership to send permanent tags. Finally, the Dealership told Mr. Jackson to purchase his own license and registration and promised to reimburse him for the fee he had already paid the Dealership. Mr. Jackson registered the Vehicle in Washington on September 16, 2022. The Dealership never reimbursed Mr. Jackson for the registration fee they had collected from him.

COMPLAINT FOR RESCISSION, BREACH OF
CONTRACT, VIOLATIONS OF THE AUTO DEALERS
ACT, VIOLATIONS OF THE CONSUMER
PROTECTION ACT and OTHER WRONGFUL
CONDUCT - 8

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

4.25   The Dealership sent Mr. Jackson only one license plate, even though Washington requires two. The Dealership stated this was due to a license plate shortage. It is not lawful to operate a vehicle on the public roads in Washington State with only one license plate.

4.26   The Washington Department of Licensing told Mr. Jackson there was no shortage of license plates and that it was possible the Dealership had simply lost the additional plate.

4.27   Mr. Jackson contacted the Attorney General's office regarding the Dealership's wrongful conduct. On June 6, 2022, the Dealership responded to the Attorney General's inquiry by stating it would take the short-bed Vehicle back and refund to Mr. Jackson "all money paid toward the vehicle to date."

4.28   The Dealership reneged on this promise. Instead, it offered to take back the Vehicle and give Mr. Jackson just $5,000.00. Further, Mr. Jackson would have to sign a Non-Disclosure Agreement. Mr. Jackson refused the offer as his down payment and the sum of his payments to date exceeded $5,000.00.

4.29   Dealership employee "Robert" told Mr. Jackson that they factored in mileage and depreciation when making their offer, blaming Mr. Jackson for "delaying the process." In fact, it was the Dealership that had delayed delivery, and later failed to exchange the Vehicle as promised in their advertised policy.

4.30   Mr. Jackson would like to purchase another vehicle, but the Dealership now requires him to borrow at a rate of 12.79%, up from 4.8%. It doubled the delivery fee, and demanded a $31,000.00 down payment instead of the original $4,000.00 it originally

COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 9

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

accepted. Mr. Jackson's credit rating declined significantly when the Dealership continually rechecked Mr. Jackson's credit. Mr. Jackson can no longer afford to purchase a vehicle from the Dealership, or any other dealership due to the Dealership's actions pertaining to his credit.

4.31    Mr. Jackson spoke with Dealership employee "Alexis" on Feb. 16 and 17 of 2022, as well as to her supervisor "Amy" on February 19, 2022.  Both failed to assist him and responded rudely to his inquiries. When Mr. Jackson explained that the Dealership had delivered the wrong vehicle to him, they stated they had delivered the vehicle with the correct VIN number, ignoring the fact that their advertising had misrepresented a short bed vehicle as a long bed vehicle.

4.32    Mr. Jackson now seeks recovery of all economic damages he has sustained that were proximately caused by the wrongful conduct of the Dealership.

## 5.  ARBITRATION

5.1    The Parties signed an "Arbitration Agreement." *See,* Exhibit 3.

5.2    The agreement stipulates that the Plaintiffs may choose either American Arbitration Association (AAA) or JAMS to arbitrate any dispute that may arise between the Parties.

5.3    The Plaintiffs choose to arbitrate this dispute with JAMS, which offers a panel of distinguished former judges specializing in consumer arbitrations for cases just like this.

5.4    Arbitration fees charged to a consumer cannot exceed the filing fee in Superior Court, if the contractual arbitration agreement is to survive constitutional scrutiny.

COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 10

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

## 6.  CAUSES OF ACTION

Based on all of the foregoing facts, the Plaintiffs assert the following causes of action against the Dealership:

### A.  Rescission

6.1      Rescission requires a material breach of contract, which is often defined as a breach that substantially defeats the purpose of the contract. <u>Mitchell v. Straith</u>, 40 Wn. App. 405, 410 (1985), *citing* 17 Am. Jur. 2d Contracts § 504, at 981 (1964). "Rescission means to abrogate or annul and requires [a] court to fashion a remedy to restore the parties to the relative positions they would have [been in] if no contract had ever been made." <u>Busch v. Nervik</u>, 38 Wn. App. 541, 582 (1984).

6.2      Numerous courts have held that all parties to a transaction for which rescission is later sought, are proper parties to the suit. <u>Shields v. Barrow</u>, 58 U.S. 130, 139 (1854)(signatories to a contract in a suit for rescission are indispensable parties.) *See also*, <u>Charron v. Meaux</u>, 60 F.R.D. 619, 180 U.S.P.Q. (BNA) (1973) (granting defendants' motion to dismiss a declaratory judgment action regarding rescission because Plaintiffs failed to join a necessary and indispensable party).

6.3      In <u>Aubrey's R.V. Ctr., Inc. v. Tandy Corp.</u>, 46 Wn. App. 595, 600 (Div. III, 1987) the Court held that "...the buyer is no longer required to elect between revocation of acceptance [or rescission] and recovery of damages for breach. Both are now available to him..." This means that a plaintiff can collect *both* rescission damages and actual damages in a suit involving a contractual dispute.

COMPLAINT FOR RESCISSION, BREACH OF
CONTRACT, VIOLATIONS OF THE AUTO DEALERS
ACT, VIOLATIONS OF THE CONSUMER
PROTECTION ACT and OTHER WRONGFUL
CONDUCT - 11

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

6.4    RCW 62A.2-608 controls the revocation of acceptance in whole or in part, of non-conforming goods. A buyer may revoke a prior acceptance of goods with non-conformities that substantially impairs its value, especially when such defects were not evident at the time of acceptance. Buyers who so revoke acceptance have the same rights with regard to the goods involved as if they had rejected them on delivery.

6.5    The Dealership represented the Vehicle as an 8' long bed truck when in fact the Vehicle was a 6.5' short bed truck. The Vehicle also had undisclosed defects, including significant rust. Thus, the Vehicle was sold with non-conformities that were not in accordance with the vehicle the Plaintiffs had ordered and that the Dealership had promised. The Plaintiffs are therefore entitled to bring forth this cause of action.

6.6    For all of the reasons cited in this Complaint, and the provisions of RCW 62A.2-608, the Plaintiffs therefore seek rescission of all contracts with the Dealership related to the purchase of the Vehicle described herein.

**B. Breach of Contract**

6.7    Under Washington law, every contract is subject to an implied duty of good faith and fair dealing. Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 112 (2014). This duty obligates the parties to a contract to cooperate with each other in good faith, so that each party may benefit from full performance. *Id.*

6.8    To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington courts have looked to a party's justified expectations under their contract. The Supreme Court has stated that "[t]he duty of good faith requires 'faithfulness

COMPLAINT FOR RESCISSION, BREACH OF
CONTRACT, VIOLATIONS OF THE AUTO DEALERS
ACT, VIOLATIONS OF THE CONSUMER
PROTECTION ACT and OTHER WRONGFUL
CONDUCT - 12

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

to an agreed common purpose and consistency with the justified expectations of the other party." Edmonson v. Popchoi, 172 Wn.2d 272, 280 (2011) (quoting *Restatement (Second) of Contracts* § 205 cmt. a (Am. Law Inst. 1981).

6.9     By representing the Vehicle as a long bed when in fact it was a short bed, as well as failing to disclose the Vehicle's significant defects, the Dealership failed to fulfill the Plaintiffs' reasonable and justified expectations that the vehicle the Dealership delivered would be equal to the vehicle the Plaintiffs ordered. Such wrongful conduct proximately caused the Plaintiffs to sustain economic damages, all as described herein.

6.10    No discovery has yet taken place. The Plaintiffs therefore reserve the right to allege new facts and/or new causes of action, as discovery occurs.

**C.  Violations of the Auto Dealers Act, RCW 46.70, *et seq.***

6.11    The Auto Dealers Act (ADA) was enacted in 1967 "to regulate licensed dealers of Vehicles doing business in Washington, in order to prevent frauds, impositions, and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." RCW 46.70, *et seq.*

6.12    RCW 46.70.180(1) is the cornerstone of the consumer protections provided by the ADA. This subsection makes it unlawful "(t)o cause or permit to be advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated in any manner whatsoever, any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading..."

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 13**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

6.13    The ADA provides a cause of action to any retail vehicle purchaser who has suffered a loss or damage because of a dealer's violation of RCW 46.70. The Plaintiffs have suffered such loss or damage as a result of the Dealership's wrongful conduct and are therefore entitled to bring this cause of action.

6.14    RCW 46.70.900 provides that the ADA "shall be liberally construed to the end that deceptive practices or commission of fraud or misrepresentation in the sale, lease, barter, or disposition of vehicles in this state may be prohibited and prevented, and irresponsible, unreliable, or dishonest persons may be prevented from engaging in the business of selling, leasing, bartering, or otherwise dealing in vehicles in this state and reliable persons may be encouraged to engage in the business of selling, leasing, bartering and otherwise dealing in vehicles in this state..." This liberal standard of interpretation of the ADA compels only one conclusion here:  the Plaintiffs are entitled to relief as a result of the Dealership's violations of the ADA.

6.15    A violation of the ADA is a *per se* violation of the Consumer Protection Act.  RCW 46.70.310.  Sherwood v. Bellevue Dodge, 35 Wn.App. 741, 745-746 (1985).

6.16    The Dealership violated the ADA by its false, deceptive, and misleading statements and representations made to the Plaintiffs before the sale of the Vehicle, including misrepresenting a short bed truck as a long bed truck.

6.17    The Dealership committed multiple violations of WAC 308-66-152 *et al.*, including, but not limited to:  advertising a used vehicle for sale that was not available at the time the advertisement was placed, WAC 308-66-152(4)(a); advertising an offer in

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 14**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

connection with the sale of a vehicle or model or type of vehicle without disclosing any material limitations, including, but not limited to, the time limit, or that there is no time limit on the offer, WAC 308-66-152(4)(c); and advertising a used vehicle which was not the same vehicle as the vehicle offered for sale, WAC 308-66-152(4)(ii). The Dealership advertised a short bed vehicle as a long bed vehicle, thus leading the Plaintiffs to purchase a vehicle they did not want. Further, when the Dealership told the Plaintiffs they could exchange the Vehicle for another vehicle advertised on their website, the vehicles the Plaintiffs chose were often already sold or simply not available.

6.18   The Plaintiffs have not yet obtained the benefit of discovery and reserve the right to amend this complaint and allege other violations of the ADA.

**D.   Violations of the Consumer Protection Act**

6.19   The Consumer Protection Act ("CPA"), codified as RCW 19.86, *et seq.*, is similar to the ADA. The CPA makes it unlawful to commit deceptive or unfair acts in trade or commerce that harms consumers and has a public impact. RCW 19.86.020 provides that, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

6.20   In order to prove a violation of the Consumer Protection Act, a plaintiff must generally prove the following specific elements: an unfair or deceptive act or practice; occurring in trade or commerce; that is injurious to the public interest; that injures the plaintiff's property or business; and that makes a public impact. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-784 (1986).

COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 15

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

6.21    Deception exists if there is a representation, omission, or practice by a defendant that is likely to mislead a reasonable consumer. <u>Panag v. Farmers Ins. Co.</u>, 166 Wn.2d 27, 28-29 (2009). It is not necessary that a plaintiff prove that they were actually misled or deceived by the conduct of a defendant. *Id.*

6.22    Besides the *per se* violations of the ADA, the Dealership committed separate and independent violations of the CPA by virtue of its deceptive and unfair conduct, as described herein. This wrongful conduct proximately caused the Plaintiffs to sustain damages in an amount to be proven during arbitration or at trial.

6.23    The Dealership engaged in deception when they advertised and represented that the Vehicle was a long bed truck. In fact, the Vehicle the Dealership delivered was a short bed truck and not what the Plaintiffs wished to purchase at all. Further, the Dealership failed to honor their warranty which invites purchasers to return unsatisfactory vehicles within seven days of purchase. Also, the Dealership's "aftercare team" failed to remedy their mistake by supplying the Plaintiff with a long bed truck for the price Mr. Jackson had originally paid. Instead, they blamed Mr. Jackson for their own errors and offered him a settlement less than what Mr. Jackson had actually paid for the Vehicle.

6.24    The distribution and sale of vehicles vitally affects the public interest. RCW 46.70.005.

6.25    If the Defendant(s) are found in violation of RCW 19.86.020, the court may increase the award of damages up to an amount not to exceed three times the actual damages sustained, provided that such increased damage award for violation may not

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 16**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone: 425-582-8165
eugenebolin@gmail.com

exceed twenty-five thousand dollars, and that such person may bring a civil action in the district court to recover his or her actual damages, except for damages which exceed the amount specified in RCW 3.66.020, and the costs of the suit, including reasonable attorney's fees. RCW 19.86.090.

6.26   No discovery has yet taken place. The Plaintiffs therefore reserve the right to allege new facts and/or new causes of action as discovery occurs.

**E.  Negligence**

6.27   The essential elements of a cause of action for negligence are (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) resulting injury; and (4) a proximate cause between the alleged breach and resulting injury. Hertog v. City of Seattle, 138 Wn.2d 265, 275 (1999).

6.28   The Plaintiffs allege that the Dealership was negligent in all of the wrongful conduct described herein. Such negligence was the result, in part, of the failure to supervise subordinate employees sufficiently to avoid substantial errors by the Dealership; and hiring and retaining unqualified or incompetent employees who fail to competently perform their duties, all as described herein.

6.29   In this case, the duty owed to the Plaintiffs by the Dealership was one of reasonable care in all matters related to the sale of the Vehicle, including properly representing the dimensions of the Vehicle's truck bed so that the Plaintiffs could make an informed purchase and receive the Vehicle they ordered. Such negligence, all as described

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 17**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

herein, proximately caused the Plaintiffs to sustain economic damages in an amount to be proven at the time of trial or arbitration.

**F. Breach of Express Warranties**

6.30    The Dealership provided the Plaintiffs with at least two express warranties. The first was that, upon delivery, the Dealership represented that the Vehicle would have an 8' bed. In fact, the Vehicle had a 6.5' bed. The Dealership also represented that the Vehicle would be free of significant defects. In fact, the Vehicle had a serious dent, bald tires, and significant rust.

6.31    The Dealership promised the Plaintiffs it would exchange the short bed truck for a long bed truck. However, the Dealership reneged on this promise by refusing to provide financing to the Plaintiffs for a long bed truck. Several times the Dealership promised to hold a truck in their inventory for the Plaintiffs, but then sold the truck to other consumers.

6.32    The Dealership charged the Plaintiffs a license and registration fee, but then failed to register the Vehicle, causing the Plaintiffs three months' loss of use. The Dealership then requested the Plaintiffs register the Vehicle themselves. The Dealership reneged on its promise to return the Plaintiffs' payment for the registration fee.

6.33    The Plaintiffs relied upon the Dealership's express warranties and would not have purchased the Vehicle but for such express warranties. The Dealership's breach of their express warranties is a proximate cause of the damages the Plaintiffs have sustained, and continue to sustain, due to the Dealership's deceptive and misleading representations.

COMPLAINT FOR RESCISSION, BREACH OF
CONTRACT, VIOLATIONS OF THE AUTO DEALERS
ACT, VIOLATIONS OF THE CONSUMER
PROTECTION ACT and OTHER WRONGFUL
CONDUCT - 18

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

6.34   No discovery has yet taken place. The Plaintiffs therefore reserve the right to allege new facts and/or new causes of action as discovery occurs.

**G. Lender Liability Under The "Holder Rule"**

6.35   CFR 433.2 provides for the preservation of a consumers' claims and defenses against the holder of a consumer credit contract for unfair or deceptive acts or practices by the seller. Under this federal regulation, all claims and defenses against the seller of goods under a consumer credit contract, may be asserted against the holder of the note. Even if the holder denies all direct liability, it remains liable for the wrongful conduct of the seller under the Holder Rule.

6.36   The holder, Bridgecrest Credit Co., LLC, knew or should have known from its prior business relationships with the Dealership, that said Dealership was involved in deceptive and unfair conduct which harmed consumers.

6.37   To the extent that the Plaintiffs are unable to satisfy any judgment in this action against the Dealership, then the holder will be required to do so under the Holder Rule – at least to the extent of the Plaintiffs' total payments made.

**H. Dealership Liable for Acts of Employees**

6.38   Licensed vehicle dealers are liable for the acts of their employees and agents without the necessity of proving all elements of a traditional principal-agent relationship. RCW 46.70.027.

6.39   To the extent that employees, salespersons, representatives, or agents of the Dealership committed any wrongful conduct in the sale of the Vehicle as described herein,

COMPLAINT FOR RESCISSION, BREACH OF
CONTRACT, VIOLATIONS OF THE AUTO DEALERS
ACT, VIOLATIONS OF THE CONSUMER
PROTECTION ACT and OTHER WRONGFUL
CONDUCT - 19

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

the Dealership is liable to the same extent as such employees, salespersons, representatives, or agents. This is true even if the employee, salesperson, representative or agent was knowingly engaged in wrongful conduct or acted beyond the scope of their authority.

**I. Joint and Several Liability**

6.40    Based on the foregoing facts, the Dealership and the individual Defendants have committed multiple violations of statutes and regulations governing the sale of motor vehicles in Washington, and other wrongful conduct, for which they are jointly and severally liable, all as described herein. The Plaintiffs are entirely faultless in all respects.

### 7. PROXIMATE CAUSE

All of the wrongful conduct committed by the Dealership, all as described herein, proximately caused the Plaintiffs to sustain economic damages and other losses, as described herein.

### 8. PRAYER FOR DAMAGES

WHEREFORE, the Plaintiffs, Kyle F. Jackson and Melanie Jackson, pray for judgment against the Defendants, jointly and severally, in an amount that will compensate the Plaintiffs for all damages sustained, including the following equitable and legal relief:

a.    rescission of all contracts with the Dealership related to the sale of the Vehicle;

b.    all relief available under the ADA and CPA, including injunctive relief to prohibit future misconduct;

c.    past and future special and/or economic damages;

COMPLAINT FOR RESCISSION, BREACH OF
CONTRACT, VIOLATIONS OF THE AUTO DEALERS
ACT, VIOLATIONS OF THE CONSUMER
PROTECTION ACT and OTHER WRONGFUL
CONDUCT - 20

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

d.      all relief available under other statutes, regulations, case law, and other authorities, whether or not cited herein;

e.      prejudgment interest calculated at the maximum amount allowable by law;

f.      reasonable attorney's fees and costs; and

g.      any and all other relief deemed just and equitable at the time of trial.

DATED at Edmonds, WA, this 3rd day of February, 2023.

                    LAW OFFICES OF EUGENE N. BOLIN, JR., P.S.


                    Eugene N. Bolin, Jr., WSBA #11450
                    Attorney for Plaintiffs

**COMPLAINT FOR RESCISSION, BREACH OF CONTRACT, VIOLATIONS OF THE AUTO DEALERS ACT, VIOLATIONS OF THE CONSUMER PROTECTION ACT and OTHER WRONGFUL CONDUCT - 21**

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
eugenebolin@gmail.com

EXHIBIT 1

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

# Retail Purchase Agreement
## – Washington –

| BUYER | Kyle Fredrick Jackson |
|---|---|
| ADDRESS LINE 1 | 8138 COWICHAN RD |
| ADDRESS LINE 2 | |
| CITY, STATE, ZIP | BLAINE WA 98230-9566 |
| PHONE(S) | RES. 2069102223 | BUS. |

| Date | 02/07/2022 | Phone | 1-800-333-4554 |
|---|---|---|---|
| Dealership | CARVANA, LLC | | |
| Address | 63 PIERCE RD | | |
| City, State, Zip | WINDER, GA 30680-7280 | | |
| Stock Number | 2001346724 | | |

## VEHICLE BEING PURCHASED

| Year | 2017 | Make | Chevrolet | Model | Silverado 2500 HD Crew Cab | Body | Truck |
|---|---|---|---|---|---|---|---|
| Lic. Plate # | | License Tab # | | Expires | | Mileage | 61430 | Color | Black |

VIN #  1GC1KVEG4HF238007

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

Buyer(s) ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| | | |
|---|---|---|
| 1 | Selling price | $46,590.00 |
| 2 | Sales Tax | $4,099.92 |
| 3 | WA Registration Fee | $30.00 |
| 4 | State Parks Donation | $5.00 |
| 5 | Registration Filing Fee | $4.50 |
| 6 | Plate Reflectivity Fee | $4.00 |
| 7 | Plate Issue Fee | $20.00 |
| 8 | Registration Service Fee | $8.00 |
| 9 | Weight Fee | $65.00 |
| 10 | Doc Fee | $15.00 |
| 11 | Titling Fees | $35.50 |
| 12 | Service Fees | $30.25 |
| 13 | Subtotal (Selling Price + Delivery Fee + Fees + Taxes) | $50,907.17 |
| 14 | Cash Down Payment | $4,000.00 |
| 15 | Total Down Payment (Cash Down Payment) | $4,000.00 |
| 16 | Balance Due (Subtotal - Total Down Payment) | $46,907.17 |
| | TOTAL BALANCE DUE (BALANCE DUE + TRADE-IN BALANCE) | $46,907.17 |

## TRADE IN VEHICLE #1

| Year N/A | Make N/A | Model N/A | Body |
|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |

VIN #  N/A

## TRADE IN VEHICLE #2

| Year N/A | Make N/A | Model N/A | Body |
|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |

VIN #  N/A

_____ Buyer's Initials

### FINANCE CHARGE
The dollar amount the credit will cost you
$      6,969.38
If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

The seller hereby warrants that this vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

**NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior Vehicles to Carvana in connection with any Retail Purchase Agreements or Retail Installment Contracts associated with this transaction.
    i. If you have returned, exchanged, or swapped two (2) prior Vehicles in connection with this transaction, you will be given a one-time opportunity to decline or accept the third and final Vehicle either during the delivery or pick-up appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after you take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
    i. Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pickup will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
    ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract executed between you and Carvana;

5. The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the Vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;

8. If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/ or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

9. Any Trade-In vehicles with current liens which are involved in this transaction will be paid off once sale is complete and after the test own period ends. You should continue to make payments on liens if payment is due within your test own period. The lien holder of the Trade-In vehicle will reimburse you for any over-payment after the transaction is complete.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.**

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the Carfax Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

**Liability Insurance:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer(s) acknowledges receipt of a copy of this Agreement. No oral agreements or understandings apply. This agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _Kyle Jackson_
Kyle Fredrick Jackson

Accepted By _____
Carvana

EXHIBIT 2

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449
THIS IS A COPY.
The Authoritative Copy of this record is held at NA3.docusign.

WA-102 9/1/2021

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | Kyle Fredrick Jackson | No. | 2001346724 |
| 63 PIERCE RD | 8138 Cowichan Rd | Date | 02/07/2022 |
| WINDER, GA 30680-7280 | Blaine WA 98230-9566 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 4,000.00 |
|---|---|---|---|---|
| 4.864 % | $ 6,969.38 | $ 46,907.17 | $ 53,876.55 | $ 57,876.55 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 68 | $ 781.00 | Monthly Beginning 03/10/22 |
| 1 | $ 768.55 | 11/10/27 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year 2017 | Make Chevrolet | Model Silverado 2500 HD Crew Cab | Style Truck | Vehicle Identification Number 1GC1KVEG4HF238007 | Odometer Mileage 61430 |
|---|---|---|---|---|---|

☐ New
☒ Used
☐ Demo

Other:

N/A

## Description of Trade-In

N/A

N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: __N/A__ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ __46,907.17__ plus finance charges accruing on the unpaid balance at the rate of __4.864__ % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and

late charge provisions shown in the *Truth-In-Lending Disclosure.* You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Additional Charge.** You agree to pay an additional charge of $ __N/A__ that will be ☐ paid in cash. ☐ financed over the term of the Contract.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of $ __N/A__ if you pay this Contract in full before we have earned that much in finance charges.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $ __20.00__

Retail Installment Contract-WA  Not for use in transactions secured by a dwelling.
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZWA 9/1/2021
Bankers Systems®
Page 1 of 5

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 4,099.92 ) | $ | 50,689.92 |
| b. | Service Contract, paid to: N/A | $ | N/A |
| c. | Documentary Service Fee (THE DOCUMENTARY SERVICE FEE IS A NEGOTIABLE FEE. Documentary service fees are not required by the state of Washington.) | $ | N/A |
| d. | N/A | $ | N/A |
| e. | **Cash Price** (a+b+c+d) | $ | 50,689.92 |
| f. | Trade-in allowance | $ | 0.00 |
| g. | Less: Amount owing, paid to (includes q): N/A | $ | N/A |
| h. | Net trade-in (f-g; if negative, enter $0 here and enter the amount on line q) | $ | 0.00 |
| i. | Cash payment | $ | 4,000.00 |
| j. | Manufacturer's rebate | $ | 0.00 |
| k. | Deferred down payment | $ | 0.00 |
| l. | Other down payment (describe) N/A | $ | N/A |
| m. | **Down Payment** (h+i+j+k+l) | $ | 4,000.00 |
| n. | **Unpaid balance of Cash Price** (e-m) | $ | 46,689.92 |
| o. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| p. | Paid to public officials: | | |
| | i  Title and Registration Fees | $ | 210.75 |
| | ii  N/A | $ | N/A |
| | iii  N/A | $ | N/A |
| | iv. To Dept. of Licensing - Emergency medical services fee | $ | 6.50 |
| q. | Financed trade-in balance (see line h) | $ | 0.00 |
| r. | Gap Waiver paid to Seller | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | To: N/A | $ | N/A |
| aa. | To: N/A | $ | N/A |
| bb. | To: N/A | $ | N/A |
| cc. | **Total Other Charges/Amts Paid** (o thru bb) | $ | 217.25 |
| dd. | **Prepaid Finance Charge** | $ | 0.00 |
| ee. | **Amount Financed** (n+cc-dd) | $ | 46,907.17 |

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☒ None

Premium $ N/A  Term N/A

Insured N/A

**Credit Disability**

☐ Single ☐ Joint ☒ None

Premium $ N/A  Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A  |  N/A

By: _____  DOB

N/A  |  N/A

By: _____  DOB

N/A  |  N/A

By: _____  DOB

**Property Insurance.** You must insure the Property.

**You may purchase or provide the insurance through any insurance company or insurance producer reasonably acceptable to us, as the law allows.**

The collision coverage deductible may not exceed $ 1,000 .

If you get insurance from or through us you will pay $ N/A

for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A

☐ $ N/A Deductible, Comprehensive $ N/A

☐ Fire-Theft and Combined Additional Cov. $ N/A

$ N/A

Insurance coverage for bodily injury liability, public liability or property damage liability is not included in this Contract unless checked and indicated.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage and we will arrange for the coverage. Otherwise you must procure the coverage (if this insurance is required).

Seller will apply on your behalf for the purchase of insurance checked and indicated above.

Retail Installment Contract-WA  Not for use in transactions secured by a dwelling.
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZWA 9/1/2021
Bankers Systems®
Page 2 of 5

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ Service Contract
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

☐ Gap Waiver or ☐ Gap Insurance
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

☐ Cosmetic Protection
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

DocuSigned by:

*Kyle Jackson*
FEDF5B4095C841A...

By: Kyle Fredrick Jackson          Date 02/07/2022

N/A                                N/A
By:                                Date

N/A                                N/A
By:                                Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we", "us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If you do not pay a scheduled installment that is more than double the amount of the average of the preceding installments, you may obtain a new payment schedule. Unless you agree otherwise, the payments due under the new schedule must not be substantially greater than the average of the preceding installments. This right does not apply if the payment schedule is adjusted to your seasonal or irregular income or to accommodate the nature of your employment.

**Governing Law and Interpretation.** This Contract is governed by the law of Washington and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
◆ You fail to perform any obligation that you have undertaken in this Contract.
◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

DS

Retail Installment Contract-WA. Not for use in transactions secured by a dwelling.
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZWA 9/1/2021
Bankers Systems®
Page 3 of 5

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY.
The Authoritative Copy of this record is held at NA3.docusign.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You agree not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

*[This area intentionally left blank.]*

### WARNING.

UNLESS YOU PROVIDE US WITH EVIDENCE OF THE PROPERTY INSURANCE COVERAGE AS REQUIRED BY THIS CONTRACT, WE MAY (BUT ARE NOT REQUIRED TO) PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE.

YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR AMOUNT FINANCED. IF THE COST IS ADDED TO THE AMOUNT FINANCED, FINANCE CHARGES AT THE RATE STATED IN THE SALES AGREEMENT SECTION WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR ANOTHER DATE AFTER THAT DATE OF LAPSE.

THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.

**Gap Waiver or Gap Insurance.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You may have the option of purchasing Gap Waiver or Gap Insurance to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Insurance agreements. Any Gap Waiver that you buy from us is part of this Contract.

## Notices

**Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply.** NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

*[This area intentionally left blank.]*



Retail Installment Contract-WA  Not for use in transactions secured by a dwelling.
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZWA 9/1/2021
Bankers Systems®
Page 4 of 5

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| **By:** | **Date** |
| Signature of Third Party Owner (NOT the Buyer) | |

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| DocuSigned by: *Kyle Jackson* FEDF5B4095C841A... | 02/07/2022 |
|---|---|
| **By:** Kyle Fredrick Jackson | **Date** |
| N/A | N/A |
| **By:** | **Date** |
| *Tad Fox* | 02/07/2022 |
| **By:** CARVANA, LLC | **Date** |

State law does not allow you to cancel this Contract simply because you change your mind. You do not have a right to cancel this Contract under RCW 63.14.154.

You authorize us to obtain information about you, or the Vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.

**NOTICE TO BUYER.** (a) Do not sign this Contract before you read it or if any spaces intended for the agreed terms, except as to unavailable information, are blank. (b) You are entitled to a copy of this Contract at the time you sign it. (c) You may at any time pay off the full unpaid balance due under this Contract, and in so doing you may receive a partial rebate of the finance charge. (d) The finance charge does not exceed ____27.90____ % per annum computed monthly.

**By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.**

**Buyer**

| DocuSigned by: *Kyle Jackson* FEDF5B4095C841A... | 02/07/2022 |
|---|---|
| **By:** Kyle Fredrick Jackson | **Date** |
| N/A | N/A |
| **By:** | **Date** |
| N/A | N/A |
| **By:** | **Date** |

**Seller**

| *Tad Fox* | 02/07/2022 |
|---|---|
| **By:** CARVANA, LLC | **Date** |

**Assignment.** This Contract and Security Agreement is assigned to
N/A

the Assignee, phone ____N/A____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller**

| N/A | N/A |
|---|---|
| **By:** | **Date** |

Retail Installment Contract-WA. Not for use in transactions secured by a dwelling.
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

DS

RSSIMVLFLZWA 9/1/2021
Bankers Systems®
Page 5 of 5

EXHIBIT 3

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

# ARBITRATION AGREEMENT

## NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement** but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf

- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

(a) The Contract.
(b) The vehicle or the sale of the vehicle.
(c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
(d) The relationships resulting from the Contract.
(e) Advertisements, promotions or oral or written statements related to the Contract.
(f) The financing terms.
(g) Your credit applications.
(h) The origination and servicing of the Contract.
(i) The collection of amounts you owe us.
(j) Any repossession or replevin, of the vehicle.
(k) Your personal information.
(l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**Your Right to Reject this Agreement. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a notice in writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN). You may email the notice to arbitrationoptout@carvana.com or you may mail it to us at: Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281. Emailed notices must be received by 11:59pm, Arizona time, on the 30th day from the contract date. If mailed, it must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration between you and us.**

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

<u>Selection of Arbitration Administrator</u>. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

<u>Location of Hearing</u>. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

<u>No Class Action or Private Attorney General Action</u> Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

<u>Notice and Cure; Special Payment</u>. Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

<u>Fees and Expenses</u>. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
(2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.
(3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

<u>Applicable Law, Award of Arbitrator and Right to Appeal.</u>Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

<u>Miscellaneous.</u> This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.
If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

DocuSign Envelope ID: F01FF801-2719-4421-AC48-0D68DF427449

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign

## Cancelling Payments and Other Terms:

We may cancel this Automatic Payments Agreement at any time and for any reason, without giving you advance notice. Even if this happens, you must still make your Contract payments on or before the due dates scheduled in the Contract. You may cancel this authorization at any time by notifying us at least three business days prior to the date that you'd like the cancellation to be effective. You can cancel online, by phone or using any other method we communicate to you. Contact your depository institution directly for more information about how to cancel ACH debits through the depository institution. You certify the information shown is correct and complete to the best of your knowledge and that you are individually authorized to have funds deducted from the designated deposit account to make your Contract payments. You agree we did not require you to sign this Automatic Payments Agreement and that you voluntarily elected to do so for your convenience and to make payments required by the Contract.

You agree to keep sufficient funds in your deposit account to pay the full amount of these payments on the dates scheduled. If an ACH debit to your deposit account is returned to us unpaid due to insufficient funds, you understand and agree that we may initiate additional ACH debits to your deposit account after that in an effort to collect payment to the extent allowed by the ACH rules. You understand that you are liable to us for any fees that may be due under the Contract if any payment is late or returned to us unpaid and/or additional interest, as allowed by the Contract and applicable law. If your depository institution returns an ACH debit, we have the right to end your automatic payments. Failure to exercise this right is not a waiver of the ability to do so at a later time.

By signing this form electronically on the date shown below, you acknowledge that you have read this Automatic Payments Agreement, agree to all its terms and conditions and will keep a completed copy of this form for your records.

Signature: DocuSigned by:

_Kyle Jackson_
EEDE5B4095C841A

Date:

02/07/2022